■ MICHELLE KANE et al., as Coadministrators of SAM BERKOWITZ, Deceased, Respondents, v CITY OF NEW YORK et al., Respondents, and ROBERT OAKES, Appellant.—In an action to recover damages for personal injuries, etc., resulting from medical malpractice, the defendant Robert Oakes appeals from an order of the Supreme Court, Kings County (Monteleone, J.), dated March 20, 1987, which denied his motion for summary judgment dismissing the complaint and all cross claims against him.

Ordered that the order is reversed, on the law, with costs, the motion is granted, and the complaint and all cross claims are dismissed as against the defendant Oakes.

Dr. Oakes, whose practice consists solely of house calls, undertook to treat the plaintiffs' decedent on April 30, 1980. According to the allegations of Dr. Oakes and the recollection of the decedent's widow, the decedent's sole complaint was of pain in his left elbow. The decedent's medical history revealed the following: "adult onset diabetes mellitus and occasional attacks of the gout". On the basis of his physical examination, which produced normal results with the exception of the left elbow which indicated mild erythema, warmth and tenderness, Dr. Oakes made a diagnosis of gouty arthritis and prescribed colchicine. He advised the decedent to contact him in the event any problems arose and to seek follow-up care from his personal physician. Neither the decedent nor his family contacted Dr. Oakes subsequent to the April 30, 1980 house call. The decedent was admitted to Kings County Hospital on May 1, 1980 where an exploratory laparotomy was performed followed by gastrointestinal surgery. The decedent died at Kings County Hospital on May 9, 1980. The death certificate attributed the immediate cause of death to occlusive coronary heart disease. The plaintiffs thereafter commenced the underlying medical malpractice action against Dr. Oakes and the other named defendants. Dr. Oakes moved for summary judgment dismissing the complaint and all cross

claims against him. The Supreme Court denied the motion, holding that there existed questions of fact necessitating a plenary trial. We reverse.

As the Court of Appeals has observed, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.,* 68 NY2d 320, 324; *see, Winegrad v New York Univ. Med. Center,* 64 NY2d 851). Moreover, "[i]n a medical malpractice action, a plaintiff, in opposition to a defendant physician's summary judgment motion, must submit evidentiary facts or materials to rebut the prima facie showing by the defendant physician that he was not negligent in treating plaintiff so as to demonstrate the existence of a triable issue of fact" (*Alvarez v Prospect Hosp., supra,* at 324). Further, "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat defendant physician's summary judgment motion" (*Alvarez v Prospect Hosp., supra,* at 325).

Our review of the record reveals that Dr. Oakes has established his prima facie entitlement to judgment as a matter of law, thereby shifting to the plaintiffs the burden of demonstrating the existence of triable issues of fact. The plaintiffs have failed to sustain this burden. Dr. Oakes's affidavit, as amplified by certain additional documents submitted in support of the motion, establishes that he was summoned to the residence of the plaintiffs' decedent on April 30, 1980, with regard to the plaintiffs' decedent's complaint of pain in the left elbow; that no other ailment was complained of or revealed by Dr. Oakes's physical examination of the plaintiffs' decedent; the medical history of the plaintiffs' decedent was unremarkable with the exception of adult onset diabetes mellitus and occasional attacks of gout; and that Dr. Oakes ultimately diagnosed the affliction as gouty arthritis, prescribing colchicine, in conformity with prior treatments administered for the same ailment, as established by hospital records submitted in further support of his motion.

In opposition to the motion, the plaintiffs submitted an attorney's affirmation, where—for the first time—there appeared the unsupported contention that the malpractice of Dr. Oakes consisted of the alleged failure to diagnose and treat a diabetic condition known as "hyperosmolar nonketotic diabetic coma". We note that no such allegation was set forth in

the plaintiffs' bill of particulars. Moreover, in order to buttress this contention, the plaintiffs' counsel offered his own diagnosis of the illness of the plaintiffs' decedent by positing the contention that the alleged symptoms accompanying his elbow affliction—of which counsel had no personal knowledge—were telltale signs of infection and that "[i]t is boilerplate medicine that an infection invariably causes a diabetic's blood sugar to become seriously elevated, and in fact often leads to the life-threatening condition hyperosmolar nonketotic diabetic coma". Significantly, there is nothing in the record which indicates that the plaintiffs' decedent was suffering from, or was admitted to the hospital for, a diabetic condition known as "hyperosmolar nonketotic diabetic coma". To the contrary, the record reveals that upon his admission to the hospital, the decedent underwent an exploratory laparotomy followed by gastrointestinal surgery with the immediate cause of death attributed to occlusive coronary heart disease.

The affidavit submitted by Dr. Schell in further opposition to the motion merely recounts, in two conclusory sentences without reference to the pertinent underlying facts relied upon, that Dr. Oakes failed to diagnose the alleged existence of the plaintiffs' decedent's "hyperglycemic condition and infection" and that such failure represented a competent and producing cause of the death of the plaintiffs' decedent. The bare, conclusory allegation that Dr. Oakes departed from accepted medical standards by failing to diagnose an affliction, the existence of which is not even reflected in the record, is without evidentiary value in terms of sustaining the plaintiffs' burden of showing that there exist triable issues of fact in respect to Dr. Oakes's alleged malpractice (see, *Witt v Agin,* 112 AD2d 64, *affd* 67 NY2d 919). Lawrence, J. P., Kunzeman, Kooper and Balletta, JJ., concur.