■ CYNTHIA SELMENSBERGER, as Executor of CLARA F. BADZINSKI, Deceased, Respondent, v KALEIDA HEALTH et al., Appellants, et al., Defendant. [845 NYS2d 659]—

Appeals from an order of the Supreme Court, Erie County (Joseph D. Mintz, J.), entered July 24, 2006 in a medical malpractice action. The order denied the motion of defendants James Corasanti, M.D. and Thomas Z. Lajos, M.D. for summary judgment dismissing the complaint against them and denied the motion of defendant Kaleida Health for summary judgment dismissing the complaint and cross claim against it.

It is hereby ordered that the order so appealed from be and the same hereby is modified on the law by granting the motion of defendant Kaleida Health and dismissing the complaint and cross claim against it and as modified the order is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking damages for the alleged medical malpractice of defendants in their diagnosis and treatment of plaintiff's decedent, who suffered from a perforation of her esophagus, a condition that led to her death nine days after she had been hospitalized with complaints of epigastric pain. We conclude that Supreme Court properly denied the motion of defendants James Corasanti, M.D. and

Thomas Z. Lajos, M.D. (physicians) for summary judgment dismissing the complaint against them. The deposition testimony and affidavits submitted by the physicians in support of their motion "established that they exercised due care in treating plaintiff's decedent" and that their care and treatment was not a cause of decedent's death (*Moticik v Sisters Healthcare*, 19 AD3d 1052, 1052-1053 [2005]; *see generally Nestorowich v Ricotta*, 97 NY2d 393, 398 [2002]), and the physicians thus established their entitlement to judgment as a matter of law (*see Lifshitz v Beth Israel Med. Ctr.-Kings Highway Div.*, 7 AD3d 759, 760 [2004]; *see generally Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Nevertheless, plaintiff raised triable issues of fact concerning the physicians' alleged medical malpractice and causation (*see Anderson v Lamaute*, 306 AD2d 232, 233-234 [2003]; *see also Kless v Paul T.S. Lee, M.D., P.C.*, 19 AD3d 1083, 1084 [2005]). Plaintiff submitted the redacted affidavit of an expert witness, who averred that the physicians failed "promptly and accurately" to diagnose decedent's condition and, upon eventually doing so, failed to "pursue a coherent plan of treatment." The expert detailed inadequacies in the procedures employed by the physicians and deviations from the standard of care and opined that such negligence caused or contributed to decedent's death. "The motion papers presented a credibility battle between the parties' experts, and issues of credibility are properly left to a jury for its resolution" (*Barbuto v Winthrop Univ. Hosp.*, 305 AD2d 623, 624 [2003]; *see Allen v General Elec. Co.*, 32 AD3d 1163, 1166 [2006]).

We conclude, however, that the court erred in denying the motion of defendant Kaleida Health (hospital) for summary judgment dismissing the complaint and cross claim against it, and we therefore modify the order accordingly. The hospital met its initial burden, and plaintiff failed to raise a triable issue of fact (*see generally Zuckerman*, 49 NY2d at 562). In particular, the redacted affidavit of plaintiff's medical expert fails to state in detail how the actions of hospital staff deviated from the standard of care or proximately caused decedent's injury and death (*see Moticik*, 19 AD3d at 1053; *see also Thompson v Orner*, 36 AD3d 791, 792 [2007]), and it is well established that, "[w]here the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation . . . , the opinion should be given no probative force" (*Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]). We thus conclude that the affidavit of plaintiff's medical expert " 'is insufficient to raise . . . a triable factual issue concerning medical malpractice' " with respect to the hospital (*Moticik*, 19 AD3d at 1053).

All concur except Scudder, P.J., and Peradotto, J., who dissent

in part and vote to reverse in accordance with the following memorandum.

Scudder, P.J., and Peradotto, J. (dissenting). We respectfully dissent in part. We agree with the majority that Supreme Court erred in denying the motion of defendant Kaleida Health (hospital) seeking summary judgment dismissing the complaint and cross claim against it. In our view, however, the court also erred in denying the motion of defendants James Corasanti, M.D. and Thomas Z. Lajos, M.D. (physicians) seeking summary judgment dismissing the complaint against them because we cannot agree with the majority that the affidavit of plaintiff's expert raised an issue of fact sufficient to defeat that motion. We therefore would reverse the order, grant the motion of the hospital, dismiss the complaint and cross claim against it and grant the motion of the physicians and dismiss the complaint against them.

Although the majority writes that plaintiff's "expert detailed inadequacies in the procedures employed by the physicians and deviations from the standard of care," in our view the expert set forth only "ultimate assertions [that] are speculative or unsupported by any evidentiary foundation, [and thus the expert's] opinion should be given no probative force" (*Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]). The record establishes that the primary cause of the death of plaintiff's decedent was sepsis as a consequence of esophageal perforation, and it is undisputed that the sepsis had developed prior to any treatment by the physicians. Plaintiff's expert failed to identify any vital signs, test results, clinical findings or other competent evidence to support the expert's opinion that the physicians deviated from accepted standards of care and worsened decedent's already grave and deteriorating condition.

With respect to Dr. Corasanti, plaintiff's expert opined that his performance of an endoscopy and placement of a PEG tube was a "departure from accepted medical practice" because the procedure "caused more contamination of an already compromised esophagus . . . and caused a further delay in the surgical treatment." The expert further opined that "the endoscopic procedure was a substantial factor" in causing decedent's death. We note, however, that the expert failed to explain how the insertion of the tube could, or did, contaminate the esophagus or cause respiratory failure. Indeed, the expert failed to establish any causal nexus between the alleged malpractice of Dr. Corasanti and decedent's injuries and death. It is undisputed that decedent developed pulmonary and circulatory collapse as a consequence of sepsis before the endoscopy procedure was

performed by Dr. Corasanti, and plaintiff's expert admitted that if sepsis develops and is "left undetected the sepsis progresses with pulmonary and circulatory collapse and death occurring within hours to days."

With respect to Dr. Lajos, it is undisputed that plaintiff had been diagnosed with an esophageal perforation and had developed sepsis by the time Dr. Lajos became involved in her care. Plaintiff's expert averred that the failure of Dr. Lajos to perform surgery for 1½ days was a "departure from accepted practice" and was a "substantial factor" in causing decedent's death. Notably, however, plaintiff's expert failed to state why the failure to perform surgery sooner was a departure from accepted practice or why the alleged departure was a proximate cause of decedent's injury and death (*see Moticik v Sisters Healthcare*, 19 AD3d 1052, 1053 [2005]; *see also Thompson v Orner*, 36 AD3d 791, 792 [2007]).

We thus conclude that the affidavit of plaintiff's expert is " 'conclusory in nature . . . and thus is insufficient to raise the existence of a triable factual issue concerning medical malpractice' " with respect to the physicians (*Moticik*, 19 AD3d at 1053). Present—Scudder, P.J., Gorski, Centra, Lunn and Peradotto, JJ.