■ DAVID RYAN et al., Plaintiffs, and JESSICA RYAN, Respondent, v HECTOR B. SANTANA, M.D., et al., Appellants, et al., Defendants. [897 NYS2d 338]—

Appeals from an order of the Supreme Court, Oswego County (Norman W. Seiter, Jr., J.), entered May 12, 2008 in a medical malpractice action. The order, insofar as appealed from, denied in part the motions of defendants Hector B. Santana, M.D. and James B. Turchik, M.D. for summary judgment dismissing the complaint against them.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: Plaintiffs commenced this action seeking damages for, inter alia, the medical malpractice of Hector B. Santana, M.D. and James B. Turchik, M.D. (defendants), which included their failure to diagnosis and treat the alleged case of Lyme disease sustained by Jessica Ryan (plaintiff). Defendants appeal from an order denying those parts of their respective motions seeking summary judgment dismissing the complaint against them with respect to plaintiff. We affirm, inasmuch as we agree with Supreme Court that plaintiffs raised a triable is-

sue of fact with respect to those parts of defendants' motions (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325 [1986]).

In opposition plaintiffs submitted the affirmation of a neurological expert stating that, because defendants' differential diagnoses for plaintiff included Lyme disease, defendants' reliance on negative test results of Lyme disease tests in the absence of a confirmed alternative diagnosis deviated from the accepted standard of medical care. According to that expert, the immediate commencement of antibiotic therapy was required because early intervention offered a patient the best chance of recovery. The expert further stated that discharging plaintiff without a confirmed diagnosis and without consideration of antibiotic or antibacterial treatment in the absence of a confirmed diagnosis was also a significant departure from the accepted standard of medical care, particularly in light of the warning given on plaintiff's discharge that plaintiff might become comatose (*see Wahila v Kerr*, 204 AD2d 935, 937 [1994]). Additionally, plaintiffs submitted the letter affirmation of an expert in infectious diseases who stated that the initial negative result on the Lyme disease test could have resulted from medication taken by plaintiff prior to her examination by defendants. The infectious diseases expert similarly concluded that defendants' failure to confirm an alternative diagnosis or to begin plaintiff on an appropriate antibiotic therapy was a deviation from the accepted standard of medical care (*see id.*).

We cannot agree with the dissent that the record is devoid of evidence that plaintiff in fact suffered from Lyme disease (*cf. Kane v City of New York*, 137 AD2d 658, 660 [1988]). The record establishes that, when they examined plaintiff, defendants observed that she exhibited symptoms that could be attributed to Lyme disease, and plaintiffs' neurologist stated that those symptoms, including target lesions, were in fact indicative of Lyme disease (*cf. Czeisler v Williams*, 259 AD2d 278, 279 [1999]). Further, the conclusions of plaintiffs' experts were also based in part on the medical records of a physician who examined plaintiff subsequent to defendants' examination of her. Although those medical records are unsworn, they nevertheless are in admissible form inasmuch as they were submitted in support of the motion of defendants A.L. Lee Memorial Hospital and Jasmdiner Luthra, M.D. for summary judgment dismissing the complaint against them and are included in the record on appeal (*see Kearse v New York City Tr. Auth.*, 16 AD3d 45, 47 n 1 [2005]). Thus, plaintiffs are entitled to rely on those records in opposing defendants' respective motions (*see gener-*

*ally Feggins v Fagard*, 52 AD3d 1221, 1223 [2008]). The physician noted therein that there was "reasonable serologic evidence of Lyme disease," that plaintiff's symptoms were similar to two of his patients with Lyme disease, and that plaintiff's test results supported a diagnosis of central nervous system Lyme disease. The physician also indicated that he had seen improvement in plaintiff with the application of antibiotics with respect to her cerebellar syndrome and the evidence of Lyme disease. We thus conclude that plaintiffs raised triable issues of fact concerning the alleged malpractice of defendants (*see generally Alvarez*, 68 NY2d at 324-325).

All concur except Peradotto and Pine, JJ., who dissent and vote to reverse the order insofar as appealed from in accordance with the following memorandum.

Peradotto and Pine, JJ. (dissenting). We respectfully dissent. In our view, Hector B. Santana, M.D. and James B. Turchik, M.D. (defendants) met their burdens on those parts of their respective motions for summary judgment seeking dismissal of the complaint against them with respect to Jessica Ryan (plaintiff) by establishing that they did not deviate from accepted medical practice in treating plaintiff, and plaintiffs failed to raise a triable issue of fact with respect to the alleged malpractice of either defendant (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325 [1986]).

Significantly, although plaintiffs' allegations of malpractice are premised upon the failure of defendants to diagnose and treat plaintiff for Lyme disease, plaintiffs failed to submit evidentiary proof in admissible form establishing that plaintiff in fact had Lyme disease. In the spring of 2000, the time period of the alleged malpractice, plaintiff presented to defendants with neurological symptoms, including slurred speech and an abnormal gait. Plaintiff also exhibited four lesions on her skin. The three physicians who observed plaintiff's lesions, including defendants, all determined that the lesions were not typical of Lyme disease and were instead indicative of a fungal infection. As noted by the majority, plaintiffs' expert neurologist stated in an affirmation that "target lesions" are indicative of Lyme disease. However, the expert neurologist did not observe plaintiff's lesions, and failed to address the deposition testimony of defendants and the emergency room physician who treated plaintiff in the spring of 2000 that plaintiff's lesions were not characteristic of Lyme disease. Moreover, during plaintiff's hospital stay in May 2000, defendants ordered a Lyme titer test to screen for the presence of Lyme disease antibodies in plaintiff's blood and cerebrospinal fluid, the results of which

were negative. Following plaintiff's discharge from the hospital and at the request of plaintiff mother, Dr. Santana repeated the Lyme titer test on two different occasions and, again, the results were negative. After plaintiff left the care of Dr. Santana in June 2000, she saw numerous physicians, including at least four neurologists, none of whom diagnosed plaintiff as having Lyme disease. Plaintiff also underwent additional tests for Lyme disease, which were negative.

The majority relies on the unsworn medical records of a physician who first examined plaintiff in September 2001, more than a year after the alleged malpractice. Even assuming, arguendo, that the records were in admissible form (*see Gonzalez v Sisters Hosp.*, 309 AD2d 1277 [2003]; *cf. Feggins v Fagard*, 52 AD3d 1221, 1223 [2008]), we note that the physician acknowledged that plaintiff had no history of tick attachments or "any rashes definitely pathognomic for Lyme disease," and further stated that plaintiff did not exhibit "many extra-neurologic features that commonly may be seen in Lyme disease." After his first examination of plaintiff, the physician concluded that she suffered from a "cerebellar syndrome," which possibly was caused by Lyme disease. That hypothesis was based upon a Western Blot test administered in April 2001 that detected the presence of Lyme disease antibodies in plaintiff's blood. The Centers for Disease Control and Prevention (CDC) does not recommend Western Blot testing unless a patient first tests positive by standard testing because "[d]oing so increases the potential for false positives" and, in any event, the Western Blot test results did not meet CDC criteria for a positive finding of Lyme disease. The physician ordered numerous follow-up tests, all of which were negative or, at best, inconclusive. Notably, plaintiffs did *not* submit an affirmation or any other sworn statement from *that* physician diagnosing plaintiff with Lyme disease. In the absence of a diagnosis or other conclusive evidence that plaintiff suffered from Lyme disease, we conclude that plaintiffs failed to raise a triable issue of fact sufficient to defeat defendants' motions (*see Czeisler v Williams*, 259 AD2d 278, 279 [1999]; *Kane v City of New York*, 137 AD2d 658, 660 [1988]).

Even assuming, arguendo, that plaintiff was subsequently diagnosed with Lyme disease, we conclude that the expert affidavits submitted by plaintiffs are insufficient to raise a triable issue of fact (*see generally Alvarez*, 68 NY2d at 324-325). It is well established that "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat defendant physician[s'] summary

judgment motion[s]" (*id.* at 325; *see Mendez v City of New York,* 295 AD2d 487 [2002]). Plaintiffs submitted the affirmation of an expert neurologist who stated that defendants deviated from the accepted standard of medical care by relying on negative test results of Lyme disease to exclude their differential diagnosis of Lyme disease. The expert neurologist also faulted defendants for failing to prescribe antibiotics, stating that "[i]n a circumstance in which there is a differential or presumptive diagnosis of Lyme disease without a specific confirmed or well-supported alternative diagnosis, antibiotic therapy should be instituted immediately."

In our view, the conclusions of plaintiffs' expert neurologist are not supported by the record and are thus insufficient to raise a triable issue of fact (*see Selmensberger v Kaleida Health,* 45 AD3d 1435, 1436 [2007]). As an initial matter, we note that plaintiff's hospital records do not support the proposition that Lyme disease was a "presumed" or even a differential diagnosis. The consultation report of Dr. Turchik that was provided to Dr. Santana does not mention Lyme disease as a possible diagnosis and states that the most "tantalizing diagnosis" is a demyelinating disease, such as multiple sclerosis. Dr. Santana's diagnoses were viral cerebellitis or a demyelinating disease, and both defendants believed that the lesions were caused by a fungal infection, i.e., ringworm. Moreover, contrary to the assertion of plaintiffs' expert neurologist, defendants did not exclude Lyme disease on the basis of negative test results; rather, both defendants reached their respective diagnoses on the basis of plaintiff's clinical presentation *before* they received the negative test results. Thus, inasmuch as the assertions of plaintiffs' expert neurologist are "unsupported by any evidentiary foundation . . . , the [expert's] opinion should be given no probative force and is insufficient to withstand summary judgment" (*Diaz v New York Downtown Hosp.,* 99 NY2d 542, 544 [2002]).

With respect to the assertion of plaintiffs' expert neurologist that defendants departed from the accepted standard of medical care by discharging plaintiff from the hospital without a confirmed diagnosis, we note that, according to the documentation in the record on appeal, plaintiff still does not have a confirmed diagnosis of Lyme disease or, indeed, any other disease. Plaintiff was discharged as neurologically stable after defendants conducted numerous tests and procedures, and plaintiffs' expert neurologist failed to identify what else defendants should have done before releasing plaintiff from the hospital. In any event, the expert's affidavit contains no allegation, let alone any evidence, that plaintiff's discharge from the

hospital in May 2000 caused or contributed to plaintiff's injuries (*see Lebron v St. Vincent's Hosp. & Med. Ctr.*, 261 AD2d 246 [1999]).

Plaintiffs also submitted the letter affirmation of an expert in infectious disease who stated that defendants deviated from the accepted standard of medical care in failing to treat plaintiff with antibiotics in a timely manner. That opinion is based upon two assumptions that are unsupported by the record, however, and the letter affirmation thus is insufficient to raise a triable issue of fact (*see Shahid v New York City Health & Hosps. Corp.*, 47 AD3d 800, 802 [2008]; *Selmensberger*, 45 AD3d at 1436). The first assumption is that plaintiff was "eventually diagnosed and treated" for Lyme disease. As discussed above, that was not established by the submission of evidence in admissible form (*see Gonzalez*, 309 AD2d at 1277) or, for that matter, by any evidence in the record. The second assumption, that plaintiff's neurological symptoms cleared while plaintiff was taking an antibiotic for a sinus infection and recurred when she ceased taking the antibiotic, is an incorrect statement of the facts (*see Micciola v Sacchi*, 36 AD3d 869, 871 [2007]). Indeed, the record reflects that plaintiff first exhibited neurological symptoms *while* she was taking the antibiotic, which led the emergency room physician who treated plaintiff in May 2000 to conclude that she was experiencing an adverse reaction to the medication.

In light of the foregoing, we conclude that defendants established their entitlement to judgment as a matter of law, and plaintiffs failed to raise any triable issues of fact with respect to the alleged malpractice of either defendant concerning plaintiff (*see generally Darling v Scott*, 46 AD3d 1363 [2007]). We therefore would reverse the order insofar as appealed from, grant in their entirety the respective motions of defendants for summary judgment, and dismiss the complaint against them. Present—Centra, J.P., Peradotto, Carni, Pine and Gorski, JJ.