■ DAWN M. LORENZO et al., Respondents, v KENNETH R. KAHN, M.D., et al., Appellants. [903 NYS2d 222]—

Appeals from an order of the Supreme Court, Erie County (Joseph D. Mintz, J.), entered January 14, 2009 in a medical malpractice action. The order, insofar as appealed from, denied in part the motions of defendants for summary judgment dismissing the complaint.

It is hereby ordered that the order so appealed from is modified on the law by granting those parts of the motion of defendants Liang Bartkowiak, M.D. and Children's Hospital of Buffalo seeking summary judgment dismissing the first causes of action against them except insofar as those causes of action, as amplified by the bill of particulars, allege that defendant Liang Bartkowiak, M.D. failed to intervene when directed to perform a midline episiotomy and seeking summary judgment dismissing the second causes of action against them and dismissing the first causes of action to that extent against those defendants and dismissing the second causes of action against those defend-

ants; and by granting those parts of the motion of defendants Kenneth R. Kahn, M.D. and University Gynecologists & Obstetricians, Inc. seeking summary judgment dismissing the second causes of action against them insofar as those causes of action, as amplified by the bill of particulars, allege that those defendants failed to obtain the informed consent of plaintiff Dawn M. Lorenzo for a vaginal delivery and for care and treatment by a medical resident and dismissing those causes of action to that extent against those defendants, and as modified the order is affirmed without costs.

Memorandum: Plaintiffs commenced this medical malpractice action asserting individual causes of action against each defendant. In the first causes of action asserted against each defendant, plaintiffs alleged that the respective defendants were negligent in their care and treatment of Dawn M. Lorenzo (plaintiff) while she was hospitalized for the birth of plaintiffs' child. Plaintiffs alleged in the second causes of action asserted against each defendant, as amplified by the bills of particulars, that the respective defendants failed to obtain the informed consent of plaintiff for a vaginal delivery instead of a cesarean section; for care and treatment by a medical resident; for an episiotomy; and for the use of forceps during delivery. Defendant Kenneth R. Kahn, M.D. is employed by defendant University Gynecologists & Obstetricians, Inc. (collectively, UGO defendants), and he supervised defendant Liang Bartkowiak, M.D., a medical resident employed by defendant Children's Hospital of Buffalo (collectively, Hospital defendants), during the birth of plaintiffs' child. It is undisputed that an episiotomy was performed on plaintiff during the course of the birth and that the child's birth was effectuated with the use of forceps. The Hospital defendants appeal from an order insofar as it denied those parts of their motion seeking summary judgment dismissing the first and second causes of action asserted against them, and the UGO defendants appeal from the same order insofar as it denied those parts of their motion seeking summary judgment dismissing the second causes of action asserted against them.

Addressing first the motion of the Hospital defendants, we note that it is well settled that, "[i]n general, a hospital may not be held vicariously liable for the malpractice of a private attending physician who is not an employee, and may not be held concurrently liable unless its employees committed independent acts of negligence or the attending physician's orders were contraindicated by normal practice such that ordinary prudence required inquiry into the correctness of [the attending physi-

cian's orders]" (*Toth v Bloshinsky*, 39 AD3d 848, 850 [2007]). Likewise, "[a] resident who assists a doctor during a medical procedure, and who does not exercise any independent medical judgment, cannot be held liable for malpractice so long as the doctor's directions did not so greatly deviate from normal practice that the resident should be held liable for failing to intervene" (*Soto v Andaz*, 8 AD3d 470, 471 [2004]; *see Muniz v Katlowitz*, 49 AD3d 511, 513 [2008]). Although the Hospital defendants established their entitlement to judgment as a matter of law with respect to the first causes of action against them, we nevertheless conclude that plaintiffs raised an issue of fact insofar as those causes of action, as amplified by the bill of particulars, allege that Dr. Bartkowiak was negligent in failing to intervene when Dr. Kahn directed her to perform a midline episiotomy. Supreme Court erred, however, in failing to dismiss the remaining claims of negligence against the Hospital defendants set forth in the first causes of action against them, and we therefore modify the order accordingly.

With respect to the second causes of action against the Hospital defendants, alleging that they failed to obtain plaintiff's informed consent (*see* Public Health Law § 2805-d [1]), we conclude that the court erred in denying those parts of the motion of the Hospital defendants with respect to the second causes of action against them, and we therefore further modify the order accordingly. Indeed, "[l]ack of informed consent means the failure of the person providing the professional treatment . . . to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical . . . practitioner under similar circumstances would have disclosed" (*id.*) and, here, Dr. Kahn was the person providing the professional treatment to plaintiff (*see Brandon v Karp*, 112 AD2d 490, 492-493 [1985]).

With respect to the motion of the UGO defendants insofar as it sought summary judgment dismissing the second causes of action against them, we conclude that the court properly denied those parts of the motion insofar as the UGO defendants failed to establish their entitlement to judgment as a matter of law with respect to the use of forceps during delivery, and plaintiffs raised issues of fact whether those defendants failed to disclose the alternatives to and the reasonably foreseeable risks and benefits of an episiotomy (§ 2805-d [1]); whether a reasonably prudent person in plaintiff's position would have consented to the use of forceps if she had been fully informed (*cf. Brandon*, 112 AD2d at 492); and whether the lack of informed consent was a proximate cause of plaintiff's injuries (*see* § 2805-d [3]).

We further conclude, however, that the court should have granted those parts of the motion of the UGO defendants with respect to the second causes of action against them, insofar as those causes of action, as amplified by the bill of particulars, allege that the UGO defendants failed to obtain the informed consent of plaintiff for a vaginal delivery and for her care and treatment by a medical resident. We therefore further modify the order accordingly.

Scudder, P.J., and Lindley, J., concur; Peradotto, J., concurs in the result and dissents in part in accordance with the following memorandum.

Peradotto, J. (concurring in part and dissenting in part). I respectfully dissent in part because, in my view, Supreme Court erred in denying those parts of the motion of defendants Kenneth R. Kahn, M.D. and University Gynecologists & Obstetricians, Inc. (collectively, UGO defendants) seeking summary judgment dismissing the informed consent causes of action against them insofar as those causes of action, as amplified by the bill of particulars, are premised upon the performance of an episiotomy.

The UGO defendants established their entitlement to judgment as a matter of law with respect to plaintiffs' informed consent causes of action by establishing that Dawn M. Lorenzo (plaintiff) consented to the performance of an episiotomy after being informed of the risks and benefits of, as well as any alternatives to, that procedure (see Public Health Law § 2805-d [1]; *Bengston v Wang*, 41 AD3d 625, 626 [2007]; *Ericson v Palleschi*, 23 AD3d 608 [2005]; *Lucenti v St. Elizabeth Hosp.*, 289 AD2d 983 [2001]). In support of their motion, the UGO defendants submitted a "Surgical Procedure(s) Request" form, signed by plaintiff, which provided that plaintiff consented to the following procedures: "Vaginal delivery, possible Cesarian Section, possible episiotomy." The form further stated that "[t]he nature and purpose of the operation(s) or the procedure(s) to treat the stated condition, its likelihood for success, alternative options (if any), the possible risks, consequences and effects associated with the operation(s) related to the procedure(s), . . . and the possibility of complications even during recuperation have been fully explained to me."

In opposition to the motion of the UGO defendants, plaintiffs failed to raise a triable issue of fact whether a reasonably prudent patient would have withheld consent to the performance of an episiotomy had the risks been explained (see *Orphan v Pilnik*, 66 AD3d 543, 544 [2009]). Plaintiffs' expert merely opined that "[plaintiff], in her position, definitely would not

have given consent" to the performance of an episiotomy *by a resident*. In any event, an expert's opinion of what a particular patient would or would not have done is insufficient to raise an issue of fact with respect to informed consent (*see id.*). Indeed, the relevant standard to be applied in informed consent cases is "not a subjective one to be asserted after the medical procedure has been performed; it is objective and measured by what a reasonably prudent person in this patient's circumstances, having sufficient knowledge of the risks incident to the surgical procedures would have decided at that time" (*Dries v Gregor*, 72 AD2d 231, 236 [1980]). Significantly, although plaintiffs' expert discussed some of the risks involved in the performance of an episiotomy, he did not opine that those risks were unreasonable or that such risks would not have been undertaken by a reasonably prudent and informed patient under the circumstances presented.

I therefore would further modify the order by granting those parts of the motion of the UGO defendants seeking summary judgment dismissing the second causes of action against them insofar as those causes of action, as amplified by the bill of particulars, allege that those defendants failed to obtain the informed consent of plaintiff for an episiotomy and dismissing those causes of action to that extent against those defendants.

Gorski, J., dissents in part in accordance with the following memorandum.

Gorski, J. (dissenting in part). I respectfully dissent in part. With respect to the potential liability in negligence of defendant Liang Bartkowiak, M.D., a resident, I agree with the majority that there is an issue of fact whether the performed procedure so "greatly deviate[d] from normal practice that the resident should be held liable for failing to intervene" (*Soto v Andaz*, 8 AD3d 470, 471 [2004]). I further conclude, however, that there is also an issue of fact whether Dr. Bartkowiak committed acts of negligence for which she can be held personally liable despite her status as a resident. As the majority notes in quoting from *Soto*, "[a] resident who assists a doctor during a medical procedure, and who does not exercise any independent medical judgment, cannot be held liable for malpractice so long as the doctor's directions did not so greatly deviate from normal practice that the resident should be held liable for failing to intervene" (*id.* at 471). Thus, a resident's shield from liability is limited to situations in which the resident is acting under the *"direct supervision"* of the primary physician (*id.* [emphasis added]; *see Toth v Bloshinsky*, 39 AD3d 848, 850 [2007]; *Filippone v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 253 AD2d 616,

618-619 [1998]). The shield from liability is not based simply on one's status as a resident but, rather, it exists because at the time of alleged malpractice a more experienced primary physician was in a direct and immediate position to keep a patient from harm. Where the primary physician is not in such a position, however, I see no reason why the resident should not be held responsible for his or her actions or inactions.

Here, the record establishes that Dr. Bartkowiak was overseeing the delivery of Dawn M. Lorenzo (plaintiff) hours before the primary physician, defendant Kenneth R. Kahn, M.D., became directly involved in the birth of plaintiffs' child. In my view, it is not possible from this record, which plaintiffs' expert has stated contains one of the most poorly documented deliveries he has seen, to determine what effect the actions or inactions of Dr. Bartkowiak had on plaintiff's condition or the decision of the primary physician to order a forceps delivery and an episiotomy. In addition, in my view it is not possible at this juncture of the litigation to parse out, as a matter of law, what actions were independently performed by Dr. Bartkowiak as opposed to the actions that were "direct[ly] supervis[ed]" such that it is appropriate to hold only the primary physician liable (*Soto*, 8 AD3d at 471). Indeed, I am unable to determine at this juncture whether an independent act of negligence on the part of Dr. Bartkowiak was a proximate cause of plaintiff's injuries (*cf. Filippone*, 253 AD2d at 619). I therefore would affirm that part of the order denying those parts of the motion of Dr. Bartkowiak and defendant Children's Hospital of Buffalo seeking summary judgment dismissing the first causes of action, for negligence, against them. Present—Scudder, P.J., Peradotto, Lindley and Gorski, JJ.