Hatch v St. Joseph's Hosp. Health Ctr. (2019 NY Slip Op 05861)





Hatch v St. Joseph's Hosp. Health Ctr.


2019 NY Slip Op 05861


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, DEJOSEPH, NEMOYER, AND CURRAN, JJ.


346 CA 18-01188

[*1]JAMES HATCH AND PATRICIA HATCH, PLAINTIFFS-APPELLANTS,
v
ST. JOSEPH'S HOSPITAL HEALTH CENTER, DEFENDANT-RESPONDENT, ET AL., DEFENDANTS. (APPEAL NO. 1.) 






SIDNEY P. COMINSKY, LLC, SYRACUSE (SIDNEY P. COMINSKY OF COUNSEL), FOR PLAINTIFFS-APPELLANTS. 
GALE GALE & HUNT, LLC, SYRACUSE (MAX D. GALE OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order of the Supreme Court, Onondaga County (James P. Murphy, J.), entered April 26, 2018. The order granted the motion of defendant St. Joseph's Hospital Health Center for summary judgment and dismissed the amended complaint against it. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiffs commenced this medical malpractice action seeking damages for injuries that James Hatch (plaintiff) sustained after undergoing an attempted lumbar fusion surgery at defendant St. Joseph's Hospital Health Center (hospital). The vascular portion of the surgery was performed primarily by defendant J. Timothy Riley, M.D., who was assisted by a vascular surgical resident, who is not a party to this action, and a second vascular surgeon, defendant Robert E. Carlin, M.D. It is undisputed that, early in the surgery, Riley encountered difficulties with plaintiff's iliac veins, which began to bleed profusely, and that attempts to repair the veins led to additional tearing and blood loss. Plaintiff spent several months in the hospital undergoing a lengthy recovery process, and plaintiffs thereafter commenced this action seeking damages for the alleged medical malpractice of defendants. The hospital and Carlin moved separately for summary judgment dismissing the amended complaint against them. In appeal No. 1, plaintiffs appeal from an order granting the hospital's motion, and we affirm. In appeal No. 2, plaintiffs appeal from an order granting Carlin's motion, and we modify the order, deny Carlin's motion in part, and reinstate the second and seventh causes of action against him.
We note at the outset that plaintiffs do not challenge in either appeal the dismissal of their first cause of action against the hospital and Carlin, for lack of informed consent, and they are therefore deemed to have abandoned any contention with respect thereto (see Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]).
In appeal No. 1, we conclude that the hospital met its initial burden on its motion by establishing that the resident—whom the hospital had agreed to defend, indemnify, and hold harmless for any negligence claims—did not exercise independent medical judgment during the surgery. It is well settled that a "resident who assists a doctor during a medical procedure, and who does not exercise any independent medical judgment, cannot be held liable for malpractice so long as the doctor's directions did not so greatly deviate from normal practice that the resident should be held liable for failing to intervene" (Wulbrecht v Jehle, 92 AD3d 1213, 1214 [4th Dept 2012] [internal quotation marks omitted]; see Reading v Fabiano, 137 AD3d 1686, 1687 [4th Dept 2016]). Here, it is undisputed that plaintiff was Riley's patient, and Riley directly oversaw [*2]the resident's limited participation in the procedure, including directing the resident on where to hold and place the retractors. We therefore conclude that the hospital met its burden on the motion by establishing that the resident did not exercise independent medical judgment, and plaintiffs failed to raise an issue of fact (see Blendowski v Wiese [appeal No. 2], 158 AD3d 1284, 1285 [4th Dept 2018]; Nasima v Dolen, 149 AD3d 759, 760 [2d Dept 2017]; Lorenzo v Kahn, 74 AD3d 1711, 1713 [4th Dept 2010]). Plaintiffs' claim that the hospital was liable because the resident was not qualified to participate in the surgery was raised for the first time in opposition to the hospital's motion, and "[a] plaintiff cannot defeat an otherwise proper motion for summary judgment by asserting a new theory of liability . . . for the first time in opposition to the motion" (DeMartino v Kronhaus, 158 AD3d 1286, 1286 [4th Dept 2018] [internal quotation marks omitted]).
In appeal No. 2, we conclude that Carlin met his initial burden with respect to the second cause of action against him, for medical malpractice, by submitting evidence establishing that he did not deviate or depart " from the applicable standard of care' " (Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017]). His expert opined that Carlin's action to stop the bleeding was "correct and appropriate" under the circumstances and did not cause or contribute to plaintiff's injuries.
We agree with plaintiffs, however, that the court nonetheless erred in granting Carlin's motion with respect to the second and seventh causes of action. Although we reject plaintiffs' contention that the court made an improper credibility determination as to the length of time that Carlin was involved in the surgery inasmuch as the evidence submitted by plaintiffs on that issue was speculative and conclusory (see generally Beverage Mktg. USA, Inc. v South Beach Beverage Co., Inc., 58 AD3d 657, 658 [2d Dept 2009]; D'Ambra v New York City Tr. Auth., 16 AD3d 101, 101 [1st Dept 2005]), we nonetheless conclude that the length of time is ultimately irrelevant. The record establishes that Carlin's " level of participation' "—though brief—was sufficient to create a duty of care that Carlin owed to plaintiff (Gedon v Bry-Lin Hosps., 286 AD2d 892, 894 [4th Dept 2001], lv denied 98 NY2d 601 [2002]), as well as an opportunity to breach that duty of care, and we agree with plaintiffs that, by submitting the affidavit of their expert, they raised an issue of fact sufficient to defeat summary judgment on the issue whether a breach of duty by Carlin caused plaintiff's injuries. Plaintiffs' expert did not point to any specific deposition testimony in support of the conclusion that Carlin deviated from the standard of care by being too rough during retraction, manipulation, and attempted repair of the blood vessels, but instead inferred the deviation in that regard based on hospital records showing that plaintiff lost a significant amount of blood and suffered decreased mean arterial pressure in the period immediately after Carlin's involvement (see generally Black v State of New York, 125 AD3d 1523, 1525-1526 [4th Dept 2015]). The expert affidavits submitted by plaintiffs and Carlin thus " present[ ] a credibility battle between the parties' experts' " with respect to whether Carlin deviated from the accepted standard of medical care and whether any such deviation caused plaintiff's injuries (Selmensberger v Kaleida Health, 45 AD3d 1435, 1436 [4th Dept 2007]; see Barbuto v Winthrop Univ. Hosp., 305 AD2d 623, 624 [2d Dept 2003]). 
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court