NANCY DiGERONIMO, Appellant, v ALLEN FUCHS et al., Respondents. [957 NYS2d 167]—

When the plaintiff became pregnant with her second child, she sought medical treatment from the defendants Allen Fuchs, an obstetrician and gynecologist, and Staten Island University Hospital (hereinafter SIUH). In accordance with her religious beliefs as a Jehovah's Witness, the plaintiff had previously signed a health care proxy indicating that she "absolutely,

unequivocally and resolutely refused'' various forms of blood transfusions, including homologous blood transfusions, i.e., the transfer of another person's blood into her body, stored autologous blood transfusions, i.e., the transfer of her own stored blood back into her body, and nonstored autologous blood transfusions, i.e., transfusions made possible through the use of intraoperative or postoperative blood salvage techniques which involve the contemporaneous recovery and reinfusion of blood lost during or after surgery which has not been stored.

Immediately following the delivery of her baby at SIUH by Fuchs, the plaintiff began experiencing substantial blood loss. When the hemorrhaging could not be stopped by less definitive measures, the plaintiff underwent a hysterectomy in order to remove her uterus, which was the source of the bleeding. After being advised by Fuchs that she would need to accept a blood transfusion in order to survive due to the amount of blood which had been lost following the delivery, the plaintiff allegedly nodded in agreement. The plaintiff's husband, acting as her healthcare proxy, also signed a consent to the blood transfusion. A homologous blood transfusion was administered and the plaintiff recovered without further incident.

The plaintiff commenced the instant action, inter alia, to recover damages for medical malpractice, alleging, among other things, that the defendants deviated from accepted standards of medical care in proceeding with a vaginal delivery, rather than a cesarean section, and that such deviation was the proximate cause of her hemorrhaging, and her need for a hysterectomy and blood transfusion.

The defendants SIUH and Fuchs separately moved for summary judgment dismissing the complaint insofar as asserted against each of them, submitting, among other things, expert affidavits which opined that it was not a departure from accepted standards of care to proceed with a vaginal delivery, since the plaintiff's sonogram results indicated that the placenta had migrated during the course of the pregnancy to a position where a cesarean section was no longer medically indicated. The experts further opined that the postpartum hemorrhaging experienced by the plaintiff was caused by a condition known as placenta increta, where the placenta attaches deeper than normal into the uterine wall and causes bleeding after detachment from the uterus. The defendants also submitted a copy of the consent form, signed by the plaintiff's husband as her healthcare proxy, agreeing to the blood transfusion.

The plaintiff opposed the defendants' respective motions for summary judgment, submitting, among other things, her own

expert affidavits which opined that it was a departure from accepted standards of medical care not to proceed with a cesarean section because the plaintiff's sonogram results showed that the placenta had not migrated to a position where a vaginal delivery was indicated, and because the medical records showed that dilation had arrested during the course of the attempted vaginal delivery, requiring an immediate cesarean section. The plaintiff's expert opined that the failure to proceed with a cesarean section was the proximate cause of the hemorrhaging, and the need for a hysterectomy and blood transfusion.

The Supreme Court granted the separate motions of SIUH and Fuchs for summary judgment dismissing the complaint insofar as asserted against each of them. The Supreme Court concluded, among other things, that although the plaintiff may have suffered emotional distress as a result of the blood transfusion, which was received in contravention to her religious beliefs, she failed to plead a legally recognized injury in the context of a medical malpractice action, since the transfusion was beneficial in nature and saved her life. The plaintiff appeals from so much of the order as granted those branches of the defendants' separate motions which were for summary judgment dismissing the cause of action to recover damages for medical malpractice insofar as asserted against each of them.

Contrary to the determination of the Supreme Court, the emotional distress damages purportedly suffered by the plaintiff as a result of the blood transfusion, which allegedly became necessary because of the defendants' malpractice, are compensable in an action to recover damages for medical malpractice. "All there need be to recover for emotional injury here is breach of a duty owing from [the defendants] to [the] plaintiff that results directly in emotional harm, and evidence sufficient to guarantee the genuineness of the claim" (*Salandy v Bryk,* 55 AD3d 147, 154-155 [2008]; *see Ornstein v New York City Health & Hosps. Corp.,* 10 NY3d 1, 6 [2008]; *Garcia v Lawrence Hosp.,* 5 AD3d 227, 228 [2004]). "[I]nasmuch as the plaintiff has alleged from the outset that receiving a transfusion would violate her religious beliefs as a Jehovah's Witness, the record contains a sufficient guarantee that her claim of having suffered emotional distress as a result of the transfusion is genuine" (*Salandy v Bryk,* 55 AD3d at 155).

Notwithstanding this error, the Supreme Court properly granted, albeit on different grounds, those branches of the separate motions of the defendants which were for summary judgment dismissing the plaintiff's cause of action to recover damages for medical malpractice insofar as asserted against each of

them. "In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (*Stukas v Streiter*, 83 AD3d 18, 23 [2011]). Accordingly, "[a] physician moving for summary judgment dismissing a complaint alleging medical malpractice must establish, prima facie, either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries" (*Gillespie v New York Hosp. Queens*, 96 AD3d 901, 902 [2012]; *Faicco v Golub*, 91 AD3d 817, 818 [2012]; *Roca v Perel*, 51 AD3d 757, 758-759 [2008]). "Once a defendant physician has made such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact, but only as to the elements on which the defendant met the prima facie burden" (*Gillespie v New York Hosp. Queens*, 96 AD3d at 902 [citations omitted]; *see Stukas v Streiter*, 83 AD3d at 30). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (*Feinberg v Feit*, 23 AD3d 517, 519 [2005]; *see Shields v Baktidy*, 11 AD3d 671, 672 [2004]). Such conflicting expert opinions will raise credibility issues which can only be resolved by a jury (*see Roca v Perel*, 51 AD3d at 759; *see Feinberg v Feit*, 23 AD3d at 519).

Here, the defendants demonstrated their prima facie entitlement to judgment as a matter of law by submitting evidence establishing that they did not depart from good and accepted practice, and that, in any event, any departure was not a proximate cause of the alleged injuries (*see Lau v Wan*, 93 AD3d 763, 765 [2012]; *Rodriguez v New York City Health & Hosps. Corp.*, 245 AD2d 174 [1997]). In opposition to the defendants' prima facie showing, the plaintiff failed to raise a triable issue of fact. Although the plaintiff's expert opined that the defendants departed from accepted standards of medical care in failing to perform a cesarean section based on the location of the placenta at the time of delivery, he acknowledged that he never reviewed the sonogram films upon which his opinion was based. Furthermore, although he opined that the results of the pathological tests showing placenta increta were incorrect, he acknowledged that he never examined the pathological specimens. In this regard, and in others, the expert affidavits submitted by the plaintiff were conclusory, speculative, and without basis in the record (*see Lahara v Auteri*, 97 AD3d 799 [2012]; *Lau v Wan*, 93 AD3d at 765; *Ellis v Eng*, 70 AD3d 887 [2010]). Accordingly, the plaintiff failed to raise a triable issue of fact, and the Supreme Court properly granted those branches of the

defendants' separate motions which were for summary judgment dismissing the cause of action to recover damages for medical malpractice insofar as asserted against each of them. Skelos, J.P., Angiolillo, Dickerson and Hall, JJ., concur.