# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1193**

**CA 13-01524**

PRESENT: SCUDDER, P.J., SMITH, PERADOTTO, CARNI, AND SCONIERS, JJ.

---

GILBERT BAGLEY, INDIVIDUALLY AND ON BEHALF OF
ASHLEY D. BAGLEY, A MINOR, ALTON BAGLEY AND THE
ESTATE OF SANDRA BAGLEY, DECEASED,
PLAINTIFF-APPELLANT,

V                                      MEMORANDUM AND ORDER

ROCHESTER GENERAL HOSPITAL, EDWARD ZINKIN, M.D.,
STEPHEN SILVER, M.D., PATRICK MARTIN, M.D., AND
MARTINE BACKENSTOSS, M.D., DEFENDANTS-RESPONDENTS.

---

BROWN & HUTCHINSON, ROCHESTER (MICHAEL COBBS OF COUNSEL), FOR
PLAINTIFF-APPELLANT.

HIRSCH & TUBIOLO, P.C., ROCHESTER (BRYAN KORNFIELD OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS EDWARD ZINKIN, M.D. AND MARTINE BACKENSTOSS,
M.D.

HARRIS BEACH PLLC, PITTSFORD (SVETLANA K. IVY OF COUNSEL), FOR
DEFENDANTS-RESPONDENTS ROCHESTER GENERAL HOSPITAL, STEPHEN SILVER,
M.D. AND PATRICK MARTIN M.D.

---

Appeal from an order of the Supreme Court, Monroe County (Ann
Marie Taddeo, J.), entered May 31, 2013.  The order granted the
motions of defendants for summary judgment and dismissed the
complaint.

It is hereby ORDERED that the order so appealed from is
unanimously affirmed without costs.

Memorandum:  In this action alleging, inter alia, medical
malpractice and wrongful death, plaintiff appeals from an order
granting defendants' motions for summary judgment dismissing the
complaint.  We affirm.  Plaintiff commenced this action seeking
damages for the death of his wife (decedent) while she was a patient
at defendant Rochester General Hospital (RGH).  Decedent presented at
RGH's renal dialysis unit with complaints of constipation, lower left
quadrant abdominal pain, and difficulty related to her home dialysis
treatment of her end-stage diabetic renal disease.  Following
laboratory tests and various imaging studies, decedent was admitted to
the emergency department with a diagnosis of bacterial peritonitis
related to her status as a peritoneal dialysis patient.  The following
day, decedent was evaluated as stable but her condition quickly
worsened, she became abruptly hypotensive and unresponsive, and died

shortly thereafter.  The immediate cause of death was cardiac arrest. Postmortem examination revealed that decedent's medical condition at the time of her death included, inter alia, ruptured acute appendicitis, pelvic abscesses, and diffuse mild acute peritonitis. Plaintiff contends that defendants failed to timely and adequately diagnose and treat decedent's ruptured acute appendicitis, and that defendants misdiagnosed decedent's condition as peritonitis.

Defendant Stephen Silver, M.D., was the physician primarily responsible for treating decedent's end-stage diabetic renal disease. Defendant Patrick Martin, M.D., was at all relevant times the attending emergency medicine physician involved in assessing and treating decedent's symptoms and complaints in the RGH emergency department.  The involvement in decedent's care of defendant Edward Zinkin, M.D., was limited to reviewing a pelvic/abdominal CT scan in his capacity as an attending radiologist at RGH.  The CT scan was ordered by Dr. Martin and originally interpreted and reported by a resident physician at RGH.  The involvement in decedent's care of defendant Martine Backenstoss, M.D., was limited to reviewing certain X ray films of decedent's kidneys, ureter, and bladder in her capacity as an attending radiologist at RGH.

It is well settled that, on a motion for summary judgment, a defendant in a medical malpractice action bears the initial burden of establishing either that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the plaintiff's injuries (*see Swanson v Raju*, 95 AD3d 1105, 1106).  Importantly, not every instance of failed treatment or diagnosis may be attributed to a hospital or physician's failure to exercise due care (*see Nestorowich v Ricotta*, 97 NY2d 393, 398; *Schrempf v State of New York*, 66 NY2d 289, 295).  Contrary to plaintiff's contention, the deposition testimony, affidavits, and expert affidavits submitted by the physicians in support of their motions "established that they exercised due care in treating plaintiff's decedent" (*Moticik v Sisters Healthcare*, 19 AD3d 1052, 1052-1053), and the physicians thus established their entitlement to judgment as a matter of law (*see Carthon v Buffalo Gen. Hosp. Deaconess Skilled Nursing Facility Div*., 83 AD3d 1404, 1405; *Selmensberger v Kaleida Health*, 45 AD3d 1435, 1435-1436; *see generally Zuckerman v City of New York*, 49 NY2d 557, 562).  "The burden then shifted to plaintiff[] to raise triable issues of fact by submitting a physician's affidavit both attesting to a departure from accepted practice and containing the attesting [physician's] opinion that the defendant[s'] omissions or departures were a competent producing cause of the injury" (*O'Shea v Buffalo Med. Group, P.C*., 64 AD3d 1140, 1141 [internal quotation marks omitted], *appeal dismissed* 13 NY3d 834).  It is well settled that "[g]eneral allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat [a] defendant physician's summary judgment motion" (*Alvarez v Prospect Hosp*., 68 NY2d 320, 325).  Thus, "[w]here the [plaintiff's] expert's ultimate assertions are speculative or unsupported by any evidentiary foundation, . . . [his or her] opinion should be given no probative force and is insufficient to withstand

summary judgment" (*Diaz v New York Downtown Hosp*., 99 NY2d 542, 544).

We agree with the physicians that the affidavit of plaintiff's expert in internal medicine and cardiology is insufficient to defeat their motions inasmuch as it is vague, conclusory, speculative, and unsupported by the medical evidence in the record before us (*see Wilk v James*, 108 AD3d 1140, 1143; *DiGeronimo v Fuchs*, 101 AD3d 933, 936-937). The affidavit of plaintiff's radiology expert was likewise "conclusory, speculative and without basis in the record" (*DiGeronimo*, 101 AD3d at 936). Thus, plaintiff failed to raise a triable issue of fact, and Supreme Court properly granted the physicians' motions seeking summary judgment dismissing the medical malpractice and wrongful death causes of action insofar as asserted against each of them.

In light of our determination, there is no viable cause of action against any individual physician to serve as a predicate for imposing vicarious liability on RGH under the theory of respondeat superior or ostensible agency (*see Magriz v St. Barnabas Hosp*., 43 AD3d 331, 332-333, *lv denied* 10 NY3d 790; *Banks v United Hosp*., 275 AD2d 623, 624), and thus the court also properly granted RGH's motion. Finally, we reject plaintiff's contention that the court erred in dismissing the cause of action for negligence. While the office practices of hospitals, physician medical groups, and their staff members may be embraced by the ordinary negligence standard (*see Yaniv v Taub*, 256 AD2d 273, 274), we conclude that the challenged conduct at issue, including the alleged lack of consultation between the medical providers about decedent's chronic underlying conditions, "bears a substantial relationship to the rendition of medical treatment by a licensed physician," and the court thus properly determined that the cause of action alleged medical malpractice, not ordinary negligence (*Weiner v Lenox Hill Hosp*., 88 NY2d 784, 788, quoting *Bleiler v Bodnar*, 65 NY2d 65, 72; *see generally Doe v Lai-Yet Lam*, 268 AD2d 206, 206).

Entered: January 2, 2015                          Frances E. Cafarell
                                                  Clerk of the Court