Gamble v New York Presbyt. Lower Manhattan Hosp. (2025 NY Slip Op 51256(U))

[*1]

Gamble v New York Presbyt. Lower Manhattan Hosp.

2025 NY Slip Op 51256(U)

Decided on August 8, 2025

Supreme Court, New York County

King, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 8, 2025
Supreme Court, New York County

William Gamble, Plaintiff,

against
New York Presbyterian Lower Manhattan Hospital as successor to 
 NEW YORK DOWNTOWN HOSPITAL, SAM KWAUK, MD, FABIO GIRON, MD, MOUNT SINAI BETH ISRAEL MEDICAL CENTER OF THE 
 MOUNT SINAI HEALTH SYSTEM, and STANLEY YANCOVITZ, MD, Defendants.

Index No. 805121/2015

Plaintiffs' Counsel: Silver & Kelmachter, LLP Address: 11 Park Place Suite 1503, New York, NY 10007
Counsel for Defendant New York Presbyterian Lower Manhattan Hospital as successor to New York Downtown Hospital: McAloon & Friedman, P.C. Address: One State Street Plaza - 23rd Floor, New York, NY 10004
Counsel for Defendant Sam Kwauk M.D.: Abrams Fensterman, LLP Address: 3 Dakota Dr Ste 300, New Hyde Park, NY 11042-1167
Counsel for Defendant Fabio Giron M.D.: Dorf Nelson & Zauderer LLP Address: 475 Fifth Avenue 17th Floor, New York, NY 10017
Counsel for Defendants Mount Sinai Beth Israel Medical Center of the Mount Sinai Health System, and Stanley Yancovitz M.D.: Shaub, Ahmuty, Citrin & Spratt Address: 1983 Marcus Ave Ste 260, New Hyde Park, NY 11042

Kathy J. King, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 160, 161, 183, 184, 185, 186, 187, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 260, 265, 269, 273, 292, 293, 294, 295, 297, 298, 306 were read on this motion to/for JUDGMENT - SUMMARY.
The following e-filed documents, listed by NYSCEF document number (Motion 005) 156, 157, 158, 159, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 188, 189, 190, 191, 223, 224, 225, 226, 227, 261, 266, 270, 274, 277, 278, 279, 280, 281, 282, 283, 284, 299, 307 were read on this motion to/for JUDGMENT - SUMMARY.
The following e-filed documents, listed by NYSCEF document number (Motion 006) 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 228, 229, 230, 231, 232, 262, 267, 271, 275, 300, 304, 305 were read on this motion to/for JUDGMENT - SUMMARY.
The following e-filed documents, listed by NYSCEF document number (Motion 007) 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 263, 268, 272, 276, 285, 286, 287, 288, 289, 290, 291, 296, 301 were read on this motion to/for JUDGMENT - SUMMARY.
Upon the foregoing documents, and oral arguments having been heard, Mot. Seq. 004, 005, 006, and 007 are consolidated for purposes of disposition.
In the within medical malpractice action, Defendants move for summary judgment, pursuant to CPLR 3212, as follows:
1. Defendants Stanley Yancovitz, M.D. ("Dr. Yancovitz") and Mount Sinai Beth Israel Medical Center of The Mount Sinai Health System ("Beth Israel") (Mtn. Seq. 004) move for an order for summary judgment as to all claims against Dr. Yancovitz and Beth Israel;
2. Defendant The New York and Presbyterian Hospital s/h/a New York Presbyterian Lower Manhattan Hospital, as successor to New York Downtown Hospital ("NYPH")[FN1](Mtn. Seq. 005) moves for an order for summary judgment, dismissing the Complaint with prejudice;
3. Defendant Dr. Sam Kwauk ("Dr. Kwauk") (Mtn. Seq. 006) moves for an order, [*2]pursuant to CPLR 3212, granting summary judgment in favor of Dr. Kwauk, dismissing Plaintiff's Complaint with prejudice and all claims against Dr. Kwuak; and
4. Defendant Dr. Fabio Giron ("Dr. Giron") (Mtn. Seq. 007) moves for an order pursuant to CPLR 3212, dismissing the Plaintiff's Complaint with prejudice and directing that summary judgment be entered in favor of Dr. Giron.
Plaintiff submits opposition solely as to Mtn Seq. 004 and Mtn. Seq. 005.
BACKGROUND
On August 26, 2012, Plaintiff was admitted to NYPH for the services of critical care specialist Dr. Giron, with diabetic ketoacidosis ("DKA") and septic shock from peritonitis, secondary to a small bowel perforation diagnosed on a CT scan allegedly from a toothpick that Plaintiff reportedly swallowed. Blood cultures were performed on admission, which indicated that Plaintiff had both a fungal infection (Candida Glabrata) and bacterial infection (Clostridium Septicum). Dr. Kwauk performed a surgery to repair the bowel perforation on August 27, 2012. After the surgery, Plaintiff was treated for, inter alia, DKA, bacterial and fungal infections, bowel perforation, and peritonitis. Plaintiff remained at NYPH until he was discharged on September 26, 2012, and did not return to NYPH thereafter.
On October 12, 2012, Plaintiff began seeing infectious disease specialist Dr. Yancovitz, who was affiliated with Beth Israel. In 2013, Plaintiff was diagnosed with Candida Blabrata (a fungal infection) in his hip causing a left hip abscess and osteomyelitis, necessitating various treatments, including total hip replacement in December 2014. 
On March 20, 2015, Plaintiff commenced the underlying action by filing a Summons and Verified Complaint alleging medical malpractice against the Defendants.
As to Dr. Giron, Dr. Kwauk and NYPH, Plaintiff's allegations are essentially identical and include claims that these Defendants were negligent from August 26, 2012, through September 26, 2012. Similar to the allegations against Dr. Giron, Dr. Kwauk, and NYPH, Plaintiff's complaint alleges that Dr. Yancovitz and Beth Israel were negligent in the treatment of Plaintiff in causing and failing to timely diagnose a Candida Glabrata (fungal infection) and/or Clostridium Septicum (bacterial) infection, small bowel perforation, intra-abdominal abscess, abscess of the left hip, osteomyelitis, and left hip fracture. The Bill of Particulars indicates that the period of allegations as to Dr. Yancovitz and Beth Israel extends from October 12, 2012 through April 29, 2013.
Defendants Dr. Yancovitz and Beth Israel (Mtn. Seq. 004) now move for summary judgment dismissal of any claims asserted against them, and Defendants NYPH (Mtn. Seq. 005), Dr. Kwauk (Mtn. Seq. 006), and Dr. Giron (Mtn. Seq. 007) move for dismissal of Plaintiff's Complaint with prejudice.

LEGAL STANDARD FOR SUMMARY JUDGMENT
A defendant physician moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law by establishing the absence of a triable issue of fact as to his or her alleged departure from accepted standards of medical practice, or by establishing that the plaintiff was not injured by such treatment (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Frye v Montefiore Med. Ctr., 70 AD3d 15 [1st Dept 2009]; McGuigan v Centereach Mgt. Group, Inc., 94 AD3d 955 [2d Dept 2012]; Sharp v Weber, 77 AD3d 812 [2d Dept 2010]; see generally Stukas v Streiter, 83 AD3d 18 [2d Dept 2011]). To satisfy this burden, a defendant must present expert opinion testimony that is supported by the facts in the record, addresses the essential allegations in the complaint or the bill of particulars, [*3]and is detailed, specific, and factual in nature (see Roques v Noble, 73 AD3d 204, 206 [1st Dept 2010]; Joyner-Pack v Sykes, 54 AD3d 727 [2d Dept 2008]; Koi Hou Chan v Yeung, 66 AD3d 642 [2d Dept 2009]; Jones v Ricciardelli, 40 AD3d 935 [2d Dept 2007]). Furthermore, to satisfy his or her burden on a motion for summary judgment, a defendant must address and rebut specific allegations of malpractice set forth in the plaintiff's bill of particulars (see Wall v Flushing Hosp. Med. Ctr., 78 AD3d 1043 [2d Dept 2010]; Grant v Hudson Val. Hosp. Ctr., 55 AD3d 874 [2d Dept 2008]; Terranova v Finklea, 45 AD3d 572 [2d Dept 2007]).
Once this prima facie showing is made, the burden shifts to the plaintiff to raise a triable issue of fact, which requires the plaintiff to proffer evidence sufficient to demonstrate that a genuine issue exists regarding the causal connection between the defendant's alleged negligence and the decedent's death (see Roques v Noble, 73 AD3d 204, 206; Obregon v NY & Presbyt. Hosp., 2012 NY Slip Op 30681[U] [Sup Ct, NY County 2012]; Alvarez v Prospect Hosp., 68 NY2d 320, 324).

DR. YANCOVITZ AND BETH ISRAEL'S SUMMARY JUDGMENT MOTION
 (MTN. SEQ. 004)
In support of their motion, Dr. Yancovitz and Beth Israel submit the affirmation of Dr. Alexander McMeeking, M.D. ("Dr. McMeeking"), a board-certified Internist and Infectious Disease physician. He opines, with a reasonable degree of medical certainty, that Dr. Yancovitz did not depart from good and accepted standards of medical care as to the diagnosis and treatment of Plaintiff's fungal infection and did not proximately cause Plaintiff's alleged injuries, including infection and osteomyelitis of the left hip joint requiring surgery, which subsequently resulted in a total hip replacement.
Dr. McMeeking indicates that, after the September 2012 discharge from NYPH, Plaintiff began treating with Dr. Yancovitz on October 12, 2012, and did not exhibit any identifiable signs or symptoms consistent with a left hip infection. Dr. McMeeking's opinion included an assessment of Plaintiff's ongoing complaints and care from the time he began treating with Dr. Yancovitz on October 12, 2012, until he underwent the April 29, 2013 CT scan where his infection was diagnosed. He notes that Plaintiff's medical records do not show complaints specific to the left hip, and therefore, it was within the standard of care for Dr. Yancovitz and Beth Israel's staff not to consider and/or workup Plaintiff for a left hip infection. According to Dr. McMeeking, a seeded, indolent organism such as the fungal infection Candida Glabrata would not result in symptomology or be detectable via testing, and as a result Dr. Yancovitz and the staff at Beth Israel did not cause or contribute to the injuries claimed, given the Plaintiff's lack of symptoms. Dr. McMeeking notes that outside of isolated complaints of pain by Plaintiff related to his hip on October 28 and 29, 2012, and bilateral hip pain on November 4, 2012, Plaintiff had no other documented instances of ongoing complaints of pain to the hip that would be suggestive of an infectious process at the hip until it was diagnosed during an abdominal/pelvic CT scan on April 29, 2013. Further, Dr. McMeeking opines that once the infection was diagnosed, the treatment provided to Plaintiff was consistent with the standard of care as he was admitted to Beth Israel and treated with IV antibiotics, placed on antifungals, and monitored for ongoing visits with Dr. Yancovitz. Dr. McMeeking further opines that after performing a sensitivity test, which revealed the organism —Candida Glabrata— to be susceptible to fluconazole, Beth Israel discontinued use of the antibiotics and antifungals, and instead replaced it with a daily regimen of fluconazole for the remainder of admission. Significantly, Dr. [*4]McMeeking opines that this fungus probably seeded to the hip joint/bone, even with the use of antibiotics and/or antifungals, so the performance of the left hip replacement with the removal of the infected joint was necessary to treat the infection irrespective of the actions and/or inactions of Dr. Yancovitz.
Based on the expert affidavit of Dr. McMeeking, the Court finds that the Moving Defendants have established prima facie entitlement to summary judgment as a matter of law as to Plaintiff's claim of alleged malpractice against Dr. Yancovitz.
In opposition, Plaintiff submits the affirmation of Expert A, a board-certified Infectious Disease physician,[FN2]
who opines, to a reasonable degree of medical certainty, that Dr. Yancovitz departed from the standard of care by ignoring and failing to investigate Plaintiff's residual mid-pelvic abscess revealed on the October 26, 2012 CT scan. According to Expert A, the abscess, when considered together with Plaintiff's history of Candida Glabrata and complaints of pain, indicate that an MRI should have been performed, since the available records show that there were signs and symptoms of infection from the time of his NYPH discharge through May 2013. While Expert A opines that the Moving Defendants did not cause the seeding of the infection to Plaintiff's left hip, he indicates that the delay in diagnosis was a contributing cause to the severity of the infection, the hip joint destruction, and the need for extensive bone resection and full two-stage arthroplasty. Expert A's opinion contravenes the opinion of Dr. McMeeking who found that Plaintiff was asymptomatic until the discovery of osteomyelitis in May 2013.
Expert A also highlights that Plaintiff's medical records are missing for certain dates central to the case because it is at that time during which signs and symptoms of a hip infection would be becoming fully manifest. As a result, Expert A contends that the Moving Defendants fail to satisfy their burden since Dr. McMeeking cannot opine as to the information contained in the missing records (see Rosenstack v Wong, 106 AD3d 804, 805 [2nd Dept 2013]; Mehra v Nayak, 103 AD3d 857, 860 [2nd Dept 2013]). Expert A draws this conclusion based on a review of Dr. Yancovitz's medical records and testimony of his custom and practice. He opines that had these records existed Dr. Yancovitz would have been able to document Plaintiff's complaints of persistent hip pain.
The Court finds that, based on Expert A's affirmation, Plaintiff has raised triable issues of fact as to the treatment and care provided by Dr. Yancovitz and the Beth Israel staff, and whether the treatment rendered proximately caused Plaintiff's alleged injuries. "Summary judgment is not appropriate . . . [when] the parties [submit] conflicting medical expert opinions because [s]uch conflicting expert opinions will raise credibility issues which can only be resolved by a jury" (see Cummings v Brooklyn Hosp. Ctr., 147 AD3d 902, 904 [2d Dept 2017], quoting DiGeronimo v Fuchs, 101 AD3d 933 [2d Dept 2012] [internal quotation marks omitted]; see also Elmes v Yelon, 140 AD3d 1009 [2d Dept 2016]; Leto v Feld, 131 AD3d 590 [2d Dept 2015]). "[C]onflicting expert opinions raise credibility issues which are to be resolved by the factfinder" or factfinders (see Stucchio v Bikvan, 155 AD3d 666, 667 [2017]).
Since Plaintiff has raised triable issues of fact against Dr. Yancovitz, an employee of Beth Israel, summary judgment is precluded as to Beth Israel. When triable issues of fact exist as to the care and treatment by a physician-employee, and whether such treatment proximately [*5]caused a plaintiff's alleged injuries, dismissal is not warranted for vicarious liability claim(s) against the employer-hospital (see Sessa v Peconic Bay Medical Center, 200 AD3d 1085; Klippel v Rubinstein, 300 AD2d 448; Rivera v County of Suffolk, 290 AD2d 430; Mduba v Benedictine Hosp., 52 AD2d 450).

NYPH (MTN. SEQ. 005), DR. KWAUK (MTN. SEQ. 006), AND DR. GIRON 
 (MTN. SEQ. 007) SUMMARY JUDGMENT MOTIONS
Defendant NYPH moves to dismiss Plaintiff's complaint which alleges that NYPH is vicariously liable for all negligent acts and/or omissions committed by its physicians, including Defendants Dr. Kwauk and Dr. Giron, residents, nurses, and/or hospital staff who participated in the care and treatment of the Plaintiff at NYPH from August 26, 2012 to September 26, 2012.
Specifically, Plaintiff's bill of particulars alleges that NYPH departed from the standard of care by causing and failing to diagnose the Plaintiff's Candida Glabrata (fungal) and/or Clostridium Septicum (bacterial) infections; causing a small bowel perforation; permitting an intra-abdominal abscess to develop; negligently performing an exploratory laparotomy with small bowel resection with ileostomy; negligently performing a percutaneous drainage; and improperly discharging Plaintiff. Based on these allegations, Plaintiff claims that NYPH proximately caused the following injuries, including perforation of the small intestine; necrosis of the small intestine; hospital-acquired infection; septic left hip; intraperitoneal abscess; osteomyelitis; and left hip arthroplasty. These allegations are identical to the claims asserted against Dr. Kwauk and Dr. Giron.
As a threshold matter, the Court shall first discuss the summary judgment motions of Dr. Kwauk and Dr. Giron since the Court's finding will determine whether NYPH is vicariously liable for the malpractice of these physicians. 
In support of his motion, Dr. Kwauk submits the affirmation of Alex M. Stone, M.D, ("Dr. Stone"), a board-certified surgeon, together with the affirmation of Dr. Umesh Gidwani, M.D. ("Dr. Gidwani"), a board-certified Internist and Pulmonologist, Critical Care, and Palliative Care physician. Dr. Gidwani also submits an affirmation in support of Dr. Giron's motion. Both experts opine to a reasonable degree of medical certainty. 
According to Dr. Stone, on August 26, 2012, Plaintiff was in a coma and presented to the Emergency Department ("ED") of NYPH with diabetic ketoacidosis, hypotension, and hypoxia. After admission to the Critical Care Unit ("CCU") he was resuscitated, followed by a CT scan of the abdomen which confirmed the presence of free air in the right lower quadrant of the abdomen, consistent with a bowel perforation in that area. Plaintiff was then seen by Dr. Kwauk and taken to the operating room. Based on the radiologic examination that diagnosed a bowel perforation, Dr. Stone concluded that Dr. Kwauk's surgery was necessary, emergent, and performed within the standard of care of emergency/surgical medicine. Dr. Stone further opined that the bowel perforation was not caused by Dr. Kwauk, as Plaintiff alleges, but was caused by Plaintiff's underlying disease which was present when Plaintiff presented at the hospital and was likely the reason he was in ketoacidosis when he arrived at NYPH. Based on Plaintiff's medical records, Dr. Stone indicated that blood cultures of Plaintiff's blood drawn in the ED prior to the surgery were later reported positive for Candida Glabrata (fungal infection) and Clostridium Septicum (bacterium infection), which establishes that Plaintiff came to the hospital with the fungal and bacterial infections. After his surgery, the Plaintiff developed an intra-abdominal [*6]abscess that required another operation to drain it. However, Dr. Stone believes the abscess resulted from the Plaintiff's ruptured intestine, which caused feces to leak into his abdominal cavity and made him susceptible to infection.
In sum, Dr. Stone opined that Plaintiff was a very sick patient who needed and received life-saving surgery that was performed within the standard of care by Dr. Kwauk and that none of Plaintiff's alleged injuries were caused by Dr. Kwauk.
Concurring with Dr. Stone, Dr. Gidwani opines that the CT of the abdomen on arrival to the ER revealed small bowel dilatation with extraluminal air consistent with perforation. According to Dr. Gidwani, the CT demonstrated that the abdomen was infected, and the bowel perforated before Dr. Kwauk treated the Plaintiff. Dr. Gidwani indicates that the Plaintiff was seen promptly in the ED and all appropriate management was initiated (blood cultures, labs, CT abdomen, IV fluids, insulin, antibiotics). Dr. Gidwani notes that when blood cultures were taken in the ED, the blood cultures were positive for fungal infection. Accordingly, Plaintiff was started on antifungal medication and was taken to the operating room a few hours later for emergency and timely exploratory laparotomy. Dr. Gidwani opined that when Plaintiff developed an intra-abdominal abscess, he was managed appropriately (with a CT scan of the abdomen, IV antibiotics and abscess drainage). According to Dr. Gidwani, subsequent blood cultures were negative for bacteria and fungi due to source control, efficacy of the antibiotics, and surgical removal of the necrotic tissue by Dr. Kwauk. Thus, it is Dr. Gidwani's opinion that Plaintiff was seen in a timely manner regarding all surgical, diagnostic, and therapeutic interventions. 
Dr. Gidwani further opined that there was no evidence of left hip necrosis on the CT scans of the abdomen and pelvis performed in August and September 2012. Notably, he opined that there is no evidence to support Plaintiff's claim that the surgical equipment and the operating room were contaminated and were the cause of Plaintiff's fungal and bacterial infection.
Additionally, Dr. Gidwani opined that there was no failure to properly and adequately control and manage Plaintiff's diabetes. He explained that when Plaintiff was discharged, he was given an outpatient appointment for follow-up with the endocrinologist for management of his diabetes. Dr. Gidwani opined that all appropriate consults were called in a timely manner, and Plaintiff's treatment was appropriately followed by Infectious Diseases, Endocrinology, and Critical Care physicians, among others.
As to Dr. Giron, Dr. Gidwani opined that Dr. Giron timely and appropriately ordered all necessary diagnostic and therapeutic interventions, including management of Plaintiff's diabetic ketoacidosis, sepsis, and abdominal complaints, and a complete workup, including a CT scan of the abdomen and pelvis in the CCU. He noted that Dr. Giron requested all appropriate consultations, including a Surgical and Infectious Disease consult upon Plaintiff's admission to NYPH on August 26, 2012. Dr. Gidwani opines that Dr. Giron did not depart from good and accepted medical practice in providing ICU services, including a physical examination, an assessment of DKA and metabolic acidosis, ordering a full workup that consisted of a CT scan of the abdomen and pelvis, and a surgical consultation referral. Dr. Gidwani concludes that nothing Dr. Giron did or failed to do was a competent producing cause of Plaintiff's alleged injuries. 
Based on their respective expert affirmations, Dr. Kwauk and Dr. Giron have established prima facie entitlement to judgment as a matter of law, which Plaintiff has failed to rebut since there is no opposition to the requested relief. Accordingly, the motions of Dr. Kwauk and Dr. [*7]Giron are granted, and the claims as to these physicians are dismissed. As a result, NYPH cannot be held vicariously liable for the treatment and care rendered by Dr. Kwauk and Dr. Giron (see generally Sessa, 200 AD3d 1085; Klippel, 300 AD2d 448; Rivera, 290 AD2d 430; Mduba, 52 AD2d 450).
In support of its motion to dismiss Plaintiff's complaint, NYPH submits the affirmation of Dr. Dana Lustbader, M.D. ("Dr. Lustbader"), a board-certified physician in Critical Care Medicine, Internal Medicine, and Hospice and Palliative Medicine. Dr. Lustbader opines, to a reasonable degree of medical certainty, that NYPH met the standard of care in treating the Plaintiff, and that nothing that was done or not done by NYPH staff caused or contributed to Plaintiff developing a hip infection. According to Dr. Lustbader, Plaintiff came into NYPH with a bacterial and fungal infection, as evidenced by the blood cultures which were done on admission, and was in septic shock from DKA and peritonitis, all of which was timely diagnosed and treated. Dr. Lustbader opined that the standard of care for a diabetic patient, even one with sepsis, does not include prophylactic treatment of antifungal medication. She explains that due to the toxicity and resistance caused by antifungal medications, they should only be administered when there is laboratory confirmation of such an infection. Dr. Lustbader further opined that following surgery, Plaintiff's medical care and treatment was properly managed by a team of specialists in the ICU. Dr. Lustbader states that antifungal medications were appropriately stopped when there was no indication of ongoing infection, as evidenced by clear blood cultures, a white blood cell count that was not abnormally high, and absence of a fever. Finally, Dr. Lustbader opined that NYPH did not depart from the standard of medical care in discharging the Plaintiff.
Here, Plaintiff, in opposition, submits the affirmations of two experts: Expert A, a board-certified Internist and Infectious Disease physician, and Expert B, a board-certified Internist, Pulmonologist, and Critical Care physician,[FN3]
which directly contravene the opinion of Dr. Lustbader, and which raise triable issues of fact regarding the care rendered to Plaintiff at NYPH. Both Expert A and Expert B opine to a reasonable degree of medical certainty that NYPH Infectious Disease staff departed from good and accepted standards of medical practice in: a) undertreating Candida Glabrata, a fungal infection that grew in his bloodstream; b) failing to recognize that Plaintiff was at risk for remote seeding of the Candida Glabrata infection from his bloodstream to his left hip; c) failing to properly administer Caspofungin in proper doses for an appropriate period of time; and d) failing to undertake proper evaluations prior to discharging the Plaintiff from NYPH on September 26, 2012 with seeding of that infection to his left hip. Experts A and B further opine that, as a result of these departures, Plaintiff developed a fungal infection in his left hip joint, osteomyelitis, and septic arthritis in the hip. Summary judgment is inappropriate when conflicting medical expert opinions create genuine issues of material fact that can only be resolved by a jury assessing credibility (Cummings v Brooklyn Hosp. Ctr., 147 AD3d 902, 904, quoting DiGeronimo v Fuchs, 101 AD3d 933 [internal quotation marks omitted]).
The Court notes that the record establishes that numerous staff members of NYPH, including Dr. Tirunagasi, Dr. Lester, Dr. Glennon, Dr. Fahrenbach, and Dr. Ji Rong, were [*8]involved in the care and treatment of Plaintiff, consistent with Plaintiff's allegations, thus establishing a claim for vicarious liability against NYPH (see Sessa, 200 AD3d 1085 ; Klippel, 300 AD2d 448 ; Rivera, 290 AD2d 430 ; Mduba, 52 AD2d 450); see also S.U. v New York Univ. Langone Med. Ctr., 2020 NY Slip Op. 30370(U) [1st Dept 2020] [holding that even if a bill of particulars lacks specificity regarding the names of individual employees, the identification of such employees during discovery and the plaintiff's expert affirmation suffices for a claim of vicarious liability against a defendant hospital]). Accordingly, NYPH's summary judgment motion is granted as to Dr. Kwauk and Dr. Giron only, and otherwise denied.
Accordingly, it is hereby
ORDERED Defendants Dr. Yancovitz and Beth Israel's motion (Mtn. Seq. 004) is denied in its entirety; and it is further
ORDERED that Defendant NYPH's motion (Mtn. Seq. 005) is granted as to Dr. Kwauk and Dr. Giron and denied in all other respects; and it is further
ORDERED that Defendant Dr. Kwauk's motion (Mtn. Seq. 006) is granted in its entirety; and it is further
ORDERED that Defendant Dr. Giron's motion (Mtn. Seq. 007) is granted in its entirety; and it is further
ORDERED that the Defendants SAM KWAUK, MD, and FABIO GIRON, MD, are to serve a copy of this order upon the Defendants with notice of entry within twenty (20) days of entry of this order; and it is further
ORDERED, that within twenty (20) days of entry of this order, counsel for Defendants, SAM KWAUK, MD, and FABIO GIRON, MD, shall serve a copy of this order with notice of entry upon all parties and the Clerk of the Court (60 Centre Street, Room 141B) and the Clerk of the General Clerk's Office (60 Centre Street, Room 119), who are directed to enter judgment in accordance with this order; and it is further
ORDERED, that service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website at the address 
www.nycourts.gov/supctmanh); and it is further
ORDERED AND ADJUDGED, that the Clerk of the Court is directed to dismiss Plaintiff's Complaint and all claims with prejudice against SAM KWAUK, MD; and it is further
ORDERED AND ADJUDGED, that the Clerk of the Court is directed to dismiss the Plaintiff's Complaint against FABIO GIRON, MD, with prejudice, and summary judgment shall be entered in favor of FABIO GIRON, MD; and it is further
ORDERED, that the parties are directed to appear for a settlement conference on January 20th, 2025, at 10am, at 60 Centre Street, Room #351, New York, NY.
This constitutes the decision and order of the Court.
DATE 8/8/2025
KATHY J. KING, J.S.C.

Footnotes

Footnote 1:Plaintiff alleges a claim for lack of informed consent in his bill of particulars, however, said cause of action is not pled in Plaintiff's complaint. "The elements of an informed consent claim are distinct from medical malpractice and must be pled as a separate theory of liability . . ." (see Noorani v Karen Horney Clinic, 2015 NY Misc LEXIS 4082 [Supreme Court, New York 2015]; see also Pagan v State of New York, 124 Misc 2d 366 [Ct Cl 1984]). "Although a bill of particulars may fill gaps in the claim, it should not be used to state a separate cause of action. Its purpose is to amplify the pleading, not serve as a substitute for it" (id.). Based on the foregoing, Plaintiff's claim for lack of informed consent shall not be considered by the Court and is dismissed as a matter of law.

Footnote 2:Plaintiff has redacted the name of his Infectious Disease expert, pursuant to CPLR 3101(d), who shall be referred to hereinafter as "Expert A."

Footnote 3:Plaintiff has redacted the name of his experts pursuant to CPLR 3101(d). The experts shall be referred to as "Expert A" and "Expert B" respectively.